IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MACK LEE HOFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:12cv106-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. §§ 401 et seq., alleging that he was unable to work because of a

disability.  His application was denied at the initial administrative level.  The plaintiff then

requested and received a hearing before an Administrative Law Judge ("ALJ").  Following

the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent

request for review.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405

(g) and 1683(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

have consented to entry of final judgment by the United States Magistrate Judge.  Based on

the court's review of the record in this case and the briefs of the parties, the court concludes

that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction**.  The plaintiff was 47 years old on the date he applied for benefits (R. 117), and 49 years old at the time of the hearing before the ALJ.  (R 39).  He has an eighth grade education.  (*Id*.).  Following the administrative hearing, the ALJ concluded that the plaintiff has severe impairments of "hypertension, mood disorder, varicose veins, [and] mild degenerative disc disease."  (R. 20).  The ALJ determined that "the claimant has the

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

residual functional capacity perform light work as defined in 20 CFR 416.967(b) except that the claimant is limited to unskilled work involving only occasional contact with the general public." (R. 23). Following the hearing, the ALJ concluded that the plaintiff could not return to his past relevant work as a construction worker, industrial cleaner, or pulpwood worker. (R. 27-28). However, the ALJ concluded that there were a significant number of jobs in the national economy that the plaintiff could perform, and thus, concluded that the plaintiff was not disabled. (R. 28-29).

**B. Plaintiff's Claims**. As stated by the plaintiff, he presents the following issues for the Court's review:

1. The Commissioner's decision should be reversed because the ALJ's finding that Mr. Hoffman is capable of performing light work is not supported by substantial evidence.

2. The Commissioner's decision should be reversed, because the ALJ's RFC finding failed to comply with Social Security Ruling ("SSR") 96-8p in that he failed to include the required "function-by-function" assessment.

3. The Commissioner's decision should be reversed because the ALJ committed reversible error by substituting his own opinion in place of an opinion by Dr. Robert Estock.

(Doc. # 12, Pl's Br. in Supp. of Compl. at 5-6).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1)

4

objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address collectively the plaintiff's claims.

The plaintiff alleges that the residual functional capacity finding of the ALJ is not supported by substantial evidence because there "is no Physical RFC assessment completed by a physician in the record," and he did not properly assess his abilities on a "function-by-function" basis in accordance with Social Security Ruling 96-8p. Hoffman further argues that the ALJ should have secured a consultative examination instead of "merely speculat[ing] on [his] physical abilities." (Doc. # 12, Pl's Br. at 9-10). Finally, the plaintiff argues that the ALJ failed to consider the opinion of the non-examining consultative, Dr. Robert Estock, who opined that the plaintiff "would respond best to a flexible work schedule in a spaced

setting with all allowable rest/work breaks."

The ALJ determined that the plaintiff could perform work at the light exertional level. (R. 23).  The medical evidence fully supports his conclusion.  Hoffman applied for disability benefits on December 10, 2008, alleging he became disabled on January 1, 2000.[4]  (R. 117, 143).  In his disability report, he alleged he was disabled due to mental impairments, an enlarged heart, high blood pressure, asthma, depression, back pain and headaches.  (R. 142). He also asserted that he stopped work on June 1, 2006 because "[his] job ended."  (R. 143).

On October 31, 2008, Hoffman presented to the Central Alabama Comprehensive Health clinic complaining of headaches and high blood pressure.  (R. 207).  He also stated that "he need[ed] to see a doctor to get Social Security."  (*Id*.)  On December 15, 2008, Hoffman complained of "not being able to walk long distances anymore . . . when walk[s], leg feels tight and upper shoulder ache[s]."  (R. 212, 279).  He also stated that when he bends forward, he gets dizzy.  (*Id*.)

On February 11, 2009, Hoffman underwent a consultative physical evaluation by Dr. James O. Colley.  (R. 233-39).  At that time, Hoffman complained of back pain, headaches, high blood pressure, anxiety and depression and varicose veins in his left leg.  (R. 233).  Dr. Colley noted that Hoffman "appeared comfortable and in no acute distress."  (R. 235).

> The claimant had a normal gait.  He had no problems taking his shoes and
> socks off or putting them back on.  He does not use an assistive device.  The
> claimant was inconsistent and gave poor effort with motor strength testing and

---

[4]   At the administrative hearing, Hoffman amended his alleged onset date to November 17, 2008. (R. 38).

6

with coordination, station, and gait testing.

He had no difficulty standing and getting on or off the examination table.  He also had no difficulty moving around on the examination table.

\*        \*        \*

The claimant had a normal station, normal gait, and normal coordination. Romberg was negative.  Finger-to-nose was normal.  The claimant could squat down 40% and get back up without assistance or without touching his legs, complaining off (sic) low back pain and left knee pain.  He also gave poor effort with tandem walking and when attempting to walk on his heels and toes, complaining of bilateral foot pain.  He gave poor effort with heel-to-knee, missing by four inches leaning back about five degrees.

(R. 235-37).

Dr. Colley diagnosed Hoffman as follows:

1.    Probable Malinger.
2.    Myofacial back pain versus mild degenerative disk disease of the thoracic and lumbar spine.
3.    Headaches, possibly posttraumatic.
4.    Hypertensive headaches, untreated hypertension secondary to poor compliance.
5.    Varicose veins in the left calf, uncomplicated.

(R. 239).

It is the ALJ's duty to determine the plaintiff's residual functional capacity based on all the evidence of record; he is not required to rely solely on a physician's assessment.  "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 CFR § 404.1545(a). Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work. 20 CFR §

404.1520(f)."  *Lewis v. Callahan,125* F.3d 1436, 1440 (11th Cir. 1997).  In determining

Hoffman's residual functional capacity, the ALJ said

> [a]fter careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined
> in 20 CFR 416.967(b) except that the claimant is limited to unskilled work
> involving only occasional contact with the general public.
>
> In making this finding, the undersigned considered all symptoms and the
> extent to which these symptoms can reasonably be accepted as consistent with
> the objective medical evidence and other evidence, based on the requirements
> of 20 CFR 416.929 and SSRs 96-4p and 96-7p.  The undersigned has also
> considered opinion evidence in accordance with the requirements of 20 CFR
> 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(R. 23).

According to Hoffman, the ALJ should not have speculated on his residual functional

capacity, but rather he should have secured a consultative physical evaluation.  The ALJ

fulfilled his obligation to secure a consultative physical examination when he referred

Hoffman to Dr. Colley.  The plaintiff conveniently ignores Dr. Colley's examination and his

assessment that Hoffman was probably malingering.

Pursuant to the substantial evidence standard, this court's review is a limited one; the

entire record must be scrutinized to determine the reasonableness of the ALJ's factual

findings.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  The ALJ evaluated all the

evidence before him which led him to conclude that the plaintiff can perform light work.  It

is not the province of this court to reweigh evidence, make credibility determinations, or

substitute its judgment for that of the ALJ.  Instead the court reviews the record to determine

8

if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 108, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Given this standard of review, the court concludes that the ALJ's residual functional capacity is consistent with the medical evidence as a whole as well as Hoffman's testimony about his impairments and abilities. In short, after a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Hoffman's residual functional capacity to perform light work.

The plaintiff also argues that the ALJ's residual functional capacity determination does not comply with Social Security Ruling 96-8p because the ALJ did not discuss, function by function, each of the seven strength demands before determining that Hoffman could perform light work. Social security rulings do not have the force and effect of statutes or regulations. *See Orn v. Astrue,* 495 F.3d 625, 636 (9th Cir. 2007)*; Fagan v. Astrue*, 231 Fed. Appx. 835, 837 fn.2 (10th Cir. 2007); *Walker v. Sec'y of Health & Human Servs.,* 943 F.2d 1257, 1295 (10th Cir. 1991); *Paxton v. Sec'y of Health & Human Servs.,* 856 F.2d 1352, 1356 (9th Cir. 1988). However, the Rulings are generally entitled to deference. *Fagan*, 231 Fed. Appx. at 837. In this case, the ALJ gave sufficient deference to the Ruling when making his residual functional capacity finding. SSR 96-8p does not require an ALJ to mechanically assess functions for which there is no credible evidence of impairment. The purpose of the function-by-function assessment is to insure that the ALJ does not overlook an important

9

restriction and thereby incorrectly classify the individual's capacity for work.  *See* SSR 96-8p, 1996 WL 374184, at *4. But an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.  *See Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003).  The ALJ made a thorough analysis of the testimony and considered all of the objective medical evidence in reaching his decision.

Moreover, even if the court assumes that the ALJ did not comply with the Ruling, Hoffman has not demonstrated that he has been prejudiced by the ALJ's failure.  *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)[5] (If the court assumes that "the Secretary did not comply with the ruling. . . .we inquire whether [the plaintiff] was prejudiced as a result of the noncompliance.").  Hoffman testified that he sweeps, walks to the store about a mile away, and goes to church.  (R. 45-46).  "While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [Hoffman] claimed."  *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007).  The evidence in the record supports the ALJ's findings regarding the plaintiff's residual functional capacity, and the court concludes that the plaintiff has failed to demonstrate that he was prejudiced.

Finally, the plaintiff argues that the ALF substituted his judgment for that of the non-

---

[5]  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

examining consultative psychiatrist when the ALJ did not consider Dr. Estock's opinion that Hoffman need a "flexible work schedule in a spaced setting."   According to Hoffman, accepting Dr. Estock's opinion that he required a flexible work schedule would result in a finding of disabled because the vocational expert testified that there are no jobs in the regional or national economy that would allow such a schedule.

The plaintiff misconstrues the vocational expert's testimony at the administrative hearing.

BY THE ATTORNEY:

Q:    With regards to the Judge's first hypothetical - -
A:    Yes, sir.
Q:    - - if you added the additional limitation from the mental RFC on the file that would require a flexible schedule in a well spaced work setting - -
         *          *          *
A:    Okay.  Let me - - I have seen it.  Let me pull it up here, so I can talk with greater accuracy.  Okay, and again, say - - would you repeat?
Q:    I believe the Page 3 says that it would respond best, but if that was a requirement that he have a flexible work schedule in a well spaced work setting, would that change your answer to the Judge's first hypothetical?
A:    I think about - -  but I want to be sure, to be able to tell you why I think that [INAUDIBLE].  These are quite simple jobs, and they're not like on an assembly line, and the DOT does not state that they involve working with people.  I know there are people around, but they are not negotiating, bargaining, transactioning, or anything with other persons. They are considered - -
Q:    Would they allow for the flexible work schedule?
A:    Can I get you to define that?  I am not trying to give you a hard, but I mean, I'm not sure what a flexible work, you know, you start at a certain time and you end, and you have your breaks and lunch, but can he wander off the job or something?  I am not sure what you mean by flexible work schedule.

11

Q:   Well - -

A:   I want to answer you, but I want to know what you mean.

Q:   *I'm not sure exactly what they intended, but I guess my interpretation would be that, you know,* one day they may need to work a certain set of hours, and the next day, they may not be able to be there at those hours, and they may need to work a different set of hours.

A:   Okay.

Q:   But still full time, obviously.

A:   Well, *the way you put it with that additional explanation, in my opinion, that would constitute a reasonable accommodation by the employer.  And that's outside the scope, really of DOT in the regular economic workplace* like any employer you might find an employer that might do that, but that would really be a reasonable accommodation on that work - - on that employer's part.

Q:   So, in as much as that would be what was meant by flexible work schedule, would there be jobs that you would be able to testify in the regional and the national economy that would exist in significant numbers?

A:   I don't think there would be.

(R. 60-62) (emphasis added).

More importantly, however, the ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987).  The ALJ considered Dr. Estock's assessment of Hoffman's ability to work, but discounted his opinion that Hoffman had a marked limitation in his ability to interact with the public.  (R. 27).  "Although Dr. Estock's assessment is generally consistent with the claimant's treatment records from East Central Mental Health, the records from his more recent counseling sessions show that he has made significant progress, which indicates that he may be less limited at the present time than Dr. Estock indicated."  (*Id.*)  Only after considering all the medical records, did the ALJ discount Dr. Estock's opinion.  Based upon

its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Estock's opinion regarding the need for a flexible work schedule.

Accordingly, the court concludes that the ALJ's decision is supported by substantial evidence, and  the ALJ did not err in concluding that the plaintiff was not disabled.

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  A separate final judgment will be entered.

Done this 13th day of November, 2012.


      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

13